Good morning. Lawrence Irwin. I'm pleased to court, appearing for Mr. Rowe Sanderson. I find myself in sort of an unusual position, being an appellate from a favorable judgment because of the way it works in the bankruptcy court. Correct. Yeah, we have to keep in mind where you won and where you lost, but here you are now. That's right. I would like to address each point briefly. I've tried to thoroughly address each of the issues in this appeal in my brief and in the reply brief, as well as in the supplemental brief. Issue 1, I think the real question is whether — it's not whether this Court would do something different, of course, than what Judge Dunn did at the trial level, but it's whether Judge Dunn abused his discretion in keeping the record open, considering the tracing of the funds, including Exhibit 9, that the plaintiffs offered, which is the monies from the escrow that went to my client's corporation. And Exhibit A, of course, is not disputed, nor is Mr. Wilms' testimony disputed at page 263 of the excerpt that the money was received. So there really is no factual dispute that the loan was repaid. It was repaid from the Lapine Village escrow, and I don't think you'll hear anything different from my opponent. If we start with the complaint in this case, which is a good place to start, they alleged, Mr. Wilms alleged, that there was a $500,000 loan made to Sanderson Company, Inc., that it was not repaid, and you will not hear again any evidence that it was, in fact, not repaid from the LPV escrow. They got those funds, and that's Exhibit A is the canceled check in evidence. And Mr. Hostetter again offered Exhibit 9 later, showing that, in fact, those funds were traced from LPV right to his client. Judge Dunn was somewhat critical of both parties, but when they're don't have much money in bankruptcy court, it's difficult to hire forensic accountants, but of the failure to present documentary evidence. But certainly, Exhibit A, which is the check, Exhibit 9, from Mr. Hostetter affidavit, Exhibit 7, which is the plaintiff's QuickBooks records that they introduced, Exhibit B, which is our QuickBooks records, which are similar, if not identical, all show this $500,000 payment being made on August 27, 2007, which shows that certainly the Wilms were not defrauded out of this $500,000. Can we just get to a couple of the issues, questions about? My concern was on the motion for reconsideration where there hadn't been documentation before, and then documentation is submitted as new evidence. But it wasn't really new evidence because there had been this conversation that Sanderson had with the woman from the title company back in March of 2010. And so I'm hard-pressed to understand why this would be considered new evidence appropriately admitted on the motion for reconsideration. All right. One thing is, under Rule 52, Judge Dunn also said, I'm keeping the record open. Right. If it's not, whether it is new evidence or isn't new evidence, under Rule 52, I believe the judge is, has the discretion to correct any manifest errors of fact that were made at the time of trial. Rule 59 is a little bit different, and Rule 60 is, I think, maybe the rule of last resort, but Judge Dunn addressed all three rules in determining that, effectively, he had been misled at the time of trial. So was it new? Well, first of all, the evidence from the title company, all that happened was Mr. Sanderson had apparently asked the title company, and this is all after trial. I mean, he asked before, but this comes up after trial. He had asked the title company to send him the LPV records because he couldn't find them, apparently, in an e-mail. Ms. Hervey testified that she sent it. She had several e-mails for Mr. Sanderson. She sent the canceled check, but that was all to one of many e-mails, if you look at the testimony carefully, that may have been current or not been current in her Outlook records for his e-mails. Certainly, Mr. Sanderson was not in business at that point, and you can determine that. Well, here's the difficulty I have with that. There's a lot of argument, but is there anywhere in the record where he says, I didn't have the phone call or I didn't get the e-mail, I didn't get the document in March of 2010? Is there anywhere that says that? He doesn't say he didn't get it. They don't say that he did, either. Well, I thought they did say he did. I mean, they have this the evidence is that there was this conversation in this e-mail. But normally when that happens, you would say, you know what, I didn't get this document. I later found it after I was rumbling around in my garage. I found it in this other box, or I found a similar copy of it in another box. But he didn't even say that. Well, in fact, he did say, I did find this additional evidence that was in my personal records, not in my business records, and then filed the motion, and that's Exhibit E that was introduced. Correct. But my question to you is, is there anything in this record in which he says, I didn't either have the phone call or I didn't get the e-mail or I didn't get the document that went with the e-mail? Well, the other thing that's just being ---- Okay. That's a yes or no answer. So it's either yes or no. If it's no, then you can explain why not. But it's a we need to kind of get the record clear. No. But I want to be sure that the Court focuses on what it is that Ms. Hervey says that she sent to an outdated e-mail address, which is a payment, a copy of a payment check from the title company to Mr. Sanderson's corporation. That does not include the post-trial evidence. That did not include the deposit slip tracing those funds to our bank of the Cascades bank accounts, our deposit into that account, followed by the same day the check to the Wilms. So she didn't have that post-trial evidence. So I want to make sure that's clear. I guess if the Wilms position is correct, a trial judge can never correct its oral findings if there was evidence that could have been presented at trial, but somehow we determined that or we determined that it could have been located but wasn't. Then the trial court doesn't have any discretion. It just is an absolute fixed rule. I don't think that's a rule in the circuit. A couple of other points. One is on interest. I think it's clear that the testimony was that the $40,000 was interest. That's what Mr. Wilms said. There's an additional $7,000 paid on top of that, and that's how we got to the $507,000. There's another check referenced in the Plaintiff's Exhibit 7 or Exhibit B that shows another $3,000 that was paid in interest. That works out to more than the 10 percent for this 235-day loan at 10 percent. I think the rule the rules allow Judge Dunn to reconsider whether or not it's based on an affidavit or not to correct a manifest error of fact, and the rule says that it can be accompanied by a motion for new trial under 59, which we did, as well as under 60. All right. Briefly, on the other issues, was the action time-barred? Certainly no motion was ever brought by the Wilms under 11 U.S.C. 523 and Rule 4007 at any time. And Rule 906, Federal Rule Bankruptcy Procedure 9006b3, states that the extensions can only be granted in accordance with the rules of Procedure 4007. They did not file a motion to extend time under 4007. They filed a motion that said we want to have additional time to object to this case as a consumer case for abuse, which it was not, so that's inapplicable, and to investigate times to file a complaint for general discharge. That they also did not do. The rules also require that cause be demonstrated. Perhaps there was no cause, except we just need time, just a pro forma incantation. When the bankruptcy court construed the motion as one arising under 407, do you view that as a sua sponte action by the court, and did the court have the authority to do that? I do view it as a sua sponte action by the court, and I do believe that the court does not have the authority to do that. The cases out of this circuit say that it is mandatory that the action, that the motion be brought before expiration of the date. And I don't think you can just take any statute and rule and say, what we really meant to do was bring under a different rule altogether. They never did that in writing at any time. They didn't even do it orally. They didn't even reference this debt in their motion whatsoever that was filed. And Judge Dunn denied their motion to extend, obviously, because it wasn't a consumer case, and under the general discharge statute. The rule that they did invoke had to do with consumer debts, right? So presumably, the bankruptcy court looked at that and said, well, I think they've cited the wrong provision, and what they're really trying to do is to seek an extension of time to file the 523 claim that they had. Once the court made that ruling, was there an objection to that? Yes. Yes, and I've quoted my objection. The judge got to write down the line to write up to, you may submit the order. And I objected and said, well, wait a minute, wait a minute. They haven't shown any cause. They haven't shown you haven't even mentioned this debt in their motion. And how am I to oppose that, just to guess it, pick a rule someplace that applies? I just don't think that that's appropriate. And they didn't ask for time. They just didn't ask for any time for an extension to object to a single debt for discharge. Issue 3 on the attorney's fees, I would point out that the Fulweiler case that the Williams relied on was a 1980 case. It was decided, it was abrogated under the Traveler's Insurance case in terms of saying you cannot get attorney's fees under contract for litigating Federal issues. That is no longer the rule. And in addition, in 2003, the Oregon legislature enacted ORS 20.083, which says, in any action relating to, and that's the language in the statute, it's plain language, any action relating to an express contract that provides for attorney's fees that can be awarded. That's certainly this action related to the contract. Judge Dunn had stated, well, Mr. Sanderson isn't a party to the contract, and therefore he can't recover attorney's fees. The statute says, yes, he can, you can, whether you're the party that's named in the contract or not. And if attorney's fees are awardable under ORS 20.083, then you also look at ORS 20.075, which we say is relevant, and why we've asked the Court to take judicial notice of the separate State case, because that then says under ORS 20.0752 that you look at the criteria under 20.0751, including the behavior of the parties and whether they've been forthright with the Court, and so forth. The last point I don't think this Court gets to, Judge Markell sort of invites the Ninth Circuit to re-examine Sasson and Kennedy dealing with the ability of the Bankruptcy Court to intermediate judgments, but I don't think this is the appropriate case to accept that invitation. Kennedy, counsel, I have a question. Initially, as I understand it, the creditor sought to discharge this claim that the debt should not be included on the basis that there was fraud in the inducement in lending the money. Am I correct? That's where I read your complaint, yes, sir. And the Bankruptcy Court initially concluded there was fraud in the inducement? That yes. And the Bankruptcy Court was aware that the $500,000 had been paid, but it concluded that there was fraud in the series of loans that were made. Isn't that true? I don't believe so, no. And nowhere did the Court find where this $500,000 was to be applied. It certainly couldn't have been applied to the unsigned, nonexistent option agreement. But it did find that there was fraud in the inducement initially? The Court, yes. The Court also did not find, however, that this $500,000 did not come from the LPV escrow and note payments, which was what they planned, which they had the burden of proof to do. But wasn't there an option agreement here involving other loans as well? The option agreement was never signed. It has 17 blank signatures. It was determined to not be operative. I see my warning light is on. If there's any other questions, I'll answer those. Thank you. Thank you. Well, good morning to the Court. Zach Hostetter, appearing on behalf of Plaintiff's Appellees Wilms. The big picture issue here is, of course, this newly discovered evidence. And we're dealing with a reconsideration motion that dealt solely with evidence that was, quote, unquote, newly discovered, or it wasn't. That was the issue before the Court. And the big picture issue here is when a litigant such as Mr. Sanderson obtains a document pretrial, doesn't exchange that document in discovery, even though requests for productions were served, and then doesn't admit it at trial, is that the basis for a reconsideration motion, whether under Rule 52 or Rule 60, because it's under the newly discovered evidence rule? Mr. Sanderson, in his brief, correctly quotes the standard of review here, and that is, in his brief, he says, the Court needs to look at Judge Dunn's opinion in order, and if it's his ruling regarding this newly discovered evidence is either, one, implausible or illogical, then that's an abuse of his discretion. So we have to look at the facts of the newly discovered evidence and whether it's implausible or illogical to believe that this was actually newly discovered. The standard is whether Mr. Sanderson was excusably ignorant of this document. That is the emerit title stub. And so if he's excusably ignorant, that's what the case law says, then this is something that may be newly discovered evidence. What the facts actually show. So our question is, is it illogical or implausible to say Mr. Sanderson was excusably ignorant? One thing that's extremely important that I'd like to bring to the Court's attention is that the affidavit that Mr. Sanderson filed in order, in support of his reconsideration motion, he says in that affidavit, I knew about the emerit title stub, essentially. I looked for it, and through all my letters, I couldn't or through all my records, I couldn't find it anywhere. And lo and behold, after trial, I found it in this box in my garage. The problem with that is twofold. The problem with that is he admits he knew it was important for trial, and he didn't get it. But the glaring problem with that is that Libby Hervey sent it to him, as the Court has noticed, on March 10th of 2010. And so both things tell us something about this evidence. One is Mr. Sanderson knew it was important prior to trial, and now we know he actually had it in his possession. Something that the Court pointed out was, whether there's anything in the record in this regard, because the burden is on Mr. Sanderson. In this sort of reconsideration motion, whether based on Rule 52 or Rule 60, Mr. Sanderson is excusably ignorant of this document. I didn't know it existed, and therefore, it's newly discovered evidence. He didn't meet that burden. One thing that's important to note as well is that after the deposition of Ms. Hervey, where she said she said she believed Mr. Sanderson gave her the e-mail address, said, send me the maritimal stub, and she did that for him. So that was her recitation of the facts. That Judge Dunn allowed further affidavits, and Mr. Sanderson actually submitted further affidavits after that deposition. Nowhere in any one of those affidavits does he say, I never received the e-mail, I lost the document. He just doesn't address it at all. It goes totally unrebutted in the record. He's not met his burden, therefore, under the case law for newly discovered evidence. Ginsburg. Does he need to meet that standard under Rule 52b? Yes. Under Rule 52b, the case law says that a Rule 52 motion is analyzed in the same way as a Rule 60 motion, where there's a number of reasons that someone would be bringing a motion under 52 or 60. But when the reason for bringing such a motion is based on new evidence, there's one standard and one standard only. And that's that, you know, it's a three-pronged test. Was the evidence in existence at the time of trial? The answer to that question is yes, with regard to this document. Did the proponent exercise due diligence in finding it? That's the second prong. And third, is it material? That is, does it change the nature of the case? The main issue, the only issue really is that second prong, whether there was any due diligence here whatsoever and whether Mr. Sanderson has met that burden. It seems what the bankruptcy court was doing is gave your clients a break because they filed under the wrong rule, albeit within the appropriate time. And although they didn't mention the 523 claim, it did come up at the hearing. So he said, okay, I'll give them a break. But then when he does get this document, it seems that the court was saying he'd be hard-pressed to continue his fraud findings in the face of this document. I mean, he says it doesn't seem to be newly discovered. Your clients have made a great argument on that, but I'm hard-pressed to let them win now that I have this document. So what's your response to that? Well, my response to that, the first part of my response is this. I did ask Judge Dunn to make specific findings with respect to this e-mail just to so that we could preserve that issue. And he said, quote, I'm not prepared to render a non-dischargeability judgment. Well, that's not a quote. He said I'm not prepared to render a non-dischargeability judgment on, quote, a technicality. And so essentially what he was saying there is that the second prong of the newly discovered evidence rule was a technicality. Even though it's not met, I'm not prepared to do that. So I think the answer to your question is yes, that's what he did. Now, my response to that is that the case law cited in my brief, it hits on some policy issues with regard to that kind of ruling by a judge that are extremely important here. And the case law, I think this was out of the Sixth Circuit, says if you do this, essentially, it can lead to pernicious, quote, results. And those pernicious results are going on here. For example, when the deposition of Libby Hervey was done, new evidence came out from plaintiffs' appellees' wills that during the course of these proceedings, that is, during the course of the time that these promissory notes were not being paid, and Mr. Sanderson was saying he wasn't getting any money, there's evidence in that escrow file that he was being paid on those notes and withholding it. So the issue then becomes, now, if we go, if we retry this issue, there's a multitude of evidence that plaintiffs' appellees' wills could present to the trial court in order to prevail. But instead, what happened is Judge Dunn allowed this document in. There's no cross-examination in it. There's no further testimony of witnesses, and a judgment is effectively reversed without a trial. So the pernicious result on those policy issues is just glaringly present in this case, and that is, you know, you get your day in court, and then a new document comes in, and bang, boom, and we're done. So that's the response to the judgment. So you're saying that, in your view, there's other evidence that would give your clients a defense to the document or would explain it in a different manner than the ultimate conclusion that the court reached? That's accurate, and the answer is yes, but more than that. In addition to there's more information in addition to that, which is that during the course of proceedings here, remember that there's a promissory note hanging out for $500,000 that Mr. Sanders is saying, I'm going to repay it, I'm going to repay it, but I'm not getting paid. That was his statement, and that's in the trial court record. It's testimony by Hank Wilms and Kathy Locke. He was saying I'm not getting paid through, and this is through 2007, the early parts of 2007. What we actually found in the emerit title, after all this came up, what we found in the emerit title escrow file was that Mr. Sanderson was paid upwards of $350,000 on that note and withheld it from Wilms. And so there's another issue there with regard to a huge issue there with regard to the evidence of dishonesty that goes to the heart of the issue of fraud and the inducement that the Court has referenced. But, of course, that's only in the record with respect to the affidavits that were filed post-trial. Can you also, counsel, respond to the argument that the Court erred in granting the extension to file the 523 claim, particularly as there's no cause demonstrated that would warrant an extension? With regard to that issue in particular, that is the cause. It's important for the Court to realize the context in which Wilms made their motion. And that was in the context of the U.S. trustee having been granted an extension to file, and I believe did file, a complaint objecting to the dischargeability of Mr. Sanderson based on fraudulent claims and withholding of assets as to other creditors, but including the Wilms. And so, at the time that this motion was made by Wilms, the honesty of Mr. Sanderson was very much in question, and I've pointed out in the record that in the complaint that the U.S. trustee filed, the Wilms are actually referenced in that complaint. And what the Wilms said, the basis for their extension of time motion was this. They needed additional time was necessary to complete the investigation so as to be able to file their dischargeability complaint. That investigation included what the trustee was doing, and so there was a bit of a fluid issue before the Court at that time with respect to Mr. Sanderson. There were very murky waters. And so, based on the – I don't think that you can take the verbiage of the motion and say that either does or does not constitute good cause without looking at the underlying case. And the underlying case was such that it was at best convoluted, and so the need for more discovery, I think, was evident to the trial judge, and in any case, this Court should defer to his discretion on that issue. Since we're on that subject, under the sua sponte question by the Court, the – although this isn't in the record, the Court pointed out it appears that it was a clerical error to say, you know, they clearly weren't bringing an extension for time on a consumer debt, and so it appeared that it was a clerical error. However, that wasn't said in detail at the hearing. You won't find that in the record because it was rather quickly done. But in any case, in the – in my brief, I think you can't find case law supporting this because it's just such a common-sense issue, but a clerical error in a motion, it's not as though a motion is some kind of incantation. If you don't say the right words, then you're automatically done. There was a hearing on this issue. It became clear that 4007 wasn't correct, and so 4004 was proceeded under. And under the general bankruptcy statutes, Judge Dunn on that issue had – could enter sua sponte orders in the interest of justice. And in looking at this case where there were allegations that Mr. Sanderson was less than honest in his bankruptcy, in that context, saying sua sponte, I'm going to allow a creditor more time to investigate it, he's allowed that under the bankruptcy statute, I believe. I'll say some closing remarks with regard to the newly-discovered evidence. And I'll – I intend to conclude with the attorney fee issue. The – Mr. Irwin stated some things with regard to this modified option agreement, saying essentially it was never signed and it wasn't operable. In the exhibit, you'll see that the modified option agreement, as is the case with most of these, allows it to be signed in counterparts. And that's exactly what happened. You don't see any of these signatures from Wilms because it was signed in counterparts. And Mr. Sanderson signed – Mr. Sanderson signed the option agreement. However, we're not here – we're not here to interpret a contract in the sense this isn't a breach of contract case. The issue is this. In the modified option agreement, it said essentially Mr. Sanderson has incurred $10 million of debt in one way or another, either it's money that we've loaned to him or that he's encumbered this property on. We've got to do something here. You need to make these benchmark payments. If you make them, great. We'll – we'll credit that to the – to the underlying promissory notes. If you don't, then we – we won't credit it. You don't get any credit for it. And so the issue is that he didn't make his benchmark payments, and it was never credited under the option agreement. So the – the importance of that document is to show not – it's not whether he breached the agreement or not. It's that he agreed. Mr. Sanderson signed that document agreeing to this set of circumstances. And then when it didn't turn out to his liking, he wanted to put that money somewhere else. But even with that, the main issue isn't with regard to that modified option agreement. The main issue is this document from a merit title that he had in his possession pretrial. Finally, on the attorney fee issue, the Fulweiler case, I do believe, is good law in this circuit and is important for the Court. There's no – there's no case that I could find that shows a debtor prevailing on a 523 action and getting attorney's fees. There are some cases in which a creditor prevails on a 523a2a action and gets attorney's fees only when you could say that it was part of the debt. In this case, creditors' whelms couldn't have gotten attorney's fees because it wasn't an action brought on the contract, and they didn't request attorney's fees for that issue. And on the same – so the issue with attorney's fees is twofold. One, it's not an action brought on the contract. And Fulweiler is still good law for that issue because it's the only case in the Ninth Circuit that I could find that deals with a debtor as opposed to creditor. But the second – so there's the two-pronged issue there, and that's that it's not an action brought on a contract, and number two, even if it were, a debtor – a debtor can't get that because it's not part – it's not under the Federal cause of action for a debtor to obtain attorney's fees. In my – in my remaining time, I was going to conclude with the policy issues, but I've already – I've already spoken to those, and I think that's clear before the Court that if the Court – even if there's so many nondoctrinal factors going on here, that is, should we look at the underlying facts to say, are Wilms – should Wilms prevail or should Mr. Sanderson prevail? But I think this is one of those cases where the second prong of the newly-discovered evidence rule is not a technicality. It's an extremely important prong that the – that the proponent must meet, and if he doesn't, then it should be denied, no matter what the nondoctrinal underlying factors are. Thank you. Thank you. The plaintiff in this case pled that they never received this $500,000 from the LPV escrow. I don't see how the burden of proof has now shifted to us to disprove that they did not get it from the LPV escrow. The – Judge Ellicombe, the security agreement in this case is very particular, and it's not ambiguous. It's secured but one $500,000 loan, not a whole bunch of other unrelated corporate loans that came later. And to shift it to us and say, yes, he absolutely – Mr. Sanderson absolutely received this document from Ameritidal, isn't true. There's no evidence that he did receive it. ER – at ER-202, which is Mr. Sanderson's affidavit, he, in fact, says, I did search the records, and I did not find these documents. So there's certainly evidence that he did not have them. Obviously, since I was a trial counsel, had we had those, I would have introduced them. But the new evidence test is not the only reason to correct a manifest error of fact in this case, and that is because the plaintiffs, whether they took the money to Las Vegas, whether they applied it to an option agreement, whatever they did with it doesn't make any difference. They received that $500,000 as they were promised from the LPV escrow. I guess that's all I have to add, unless there's any additional questions. Thank you. Thank you. I'd like to thank both counsel for your argument this morning. The case just argued, Willems v. Sanderson is submitted.
judges: Alarcon, McKeown, Nguyen